J-S55011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| HEZEKIAH JOHNSON | : | |
| | : | |
| Appellant | : | No. 1390 EDA 2017 |

Appeal from the Judgment of Sentence December 1, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012873-2015


BEFORE: OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.: **FILED DECEMBER 14, 2018**

Appellant, Hezekiah Johnson, appeals from the judgment of sentence entered on December 1, 2016, following his bench trial convictions for persons not to possess a firearm and recklessly endangering another person (REAP).[1] Upon review, we affirm the convictions, but we are constrained to vacate the judgment of sentence and remand for resentencing.

The trial court summarized the facts of this case as follows:

On October 14, 2015, [Appellant] was sitting on the front porch of his home located [on] South Robinson Street, in the city and county of Philadelphia. At approximately 1:00 a.m., witness Danielle Freeman approached the front porch that was occupied by [Appellant] and his brother, James Hart. Ms. Freeman approached [Appellant] and Mr. Hart with the intention of asking for a cigarette. As Ms. Freeman spoke with [Appellant], two men approached from the corner at Ludlow Street and immediately began firing weapons at Ms. Freeman, Mr. Hart, and [Appellant].

---

[1] 18 Pa.C.S.A. §§ 6105(a)(a)(1) and 2705, respectively.

The assailants did not speak or attempt to engage in any conversation with the three people on the front porch[.]

In response to the attack, Ms. Freeman, Mr. Hart, and [Appellant] immediately sought refuge inside the home. [Appellant's] sister and her two-year-old child were in the home when the three entered from the porch. After the three ran into the home from the porch, and approximately [60] seconds after the shots began, [Appellant's] sister, LaToya McLellan, called 911. Ms. Freeman, believing herself to be injured, immediately laid down on the floor of the home and watched [Appellant] disappear somewhere into the interior of the home. Around the one-minute mark from when the three entered into the home, Ms. [McLellan] dialed 911. […T]wo minutes after the previous gunfire had [begun], [Appellant] exited the home through the front door back onto the front porch. Immediately upon exiting the home onto the front porch, at least another two or three gunshots were heard, after which [Appellant] re-entered the house through the front door and proceeded to the upstairs level of the home.

Philadelphia police arrived within one to two minutes from the time the 911 call was placed. Upon arrival, officers noticed that the front window of [the residence] had been shot out. Officers proceeded immediately into the home and encountered three men coming down the stairs from the upstairs level of the home into the living room. Officers took the three males into custody due to their profuse sweating, heavy breathing, and nervous appearance. The officers observed spent cartridge casings on the front porch[.] Philadelphia police searched the street and located six more cartridges in the vicinity[.] At that time, [Appellant] was placed under arrest and taken into custody.

Trial Court Opinion, 1/26/2018, at 1-2 (record citations omitted).

The case proceeded as follows:

On May 26, 2016, a waiver trial was conducted in front of the trial court,[2] after which [Appellant] was subsequently found guilty of

_____

2 At trial, the Commonwealth presented three, recorded prison conversations between Appellant and his mother and an unidentified third party. **See** N.T., 5/26/2016, at 46-48. During those conversations, Appellant asked if the "hot"

- 2 -

[the aforementioned charges]. On December 1, 2016, [Appellant] was sentenced by the court to an aggregate term of five to ten years['] incarceration. [More specifically, the trial court sentenced Appellant to five to ten years of imprisonment with a concurrent sentence of one to two years for REAP.]

On December 6, 2016, [Appellant] filed a timely post-sentence motion for reconsideration of his sentence. On April 6, 2017, [Appellant's] motion for reconsideration of his sentence was denied by operation of law. On April 26, 2017, [Appellant] filed a notice of appeal [to this Court]. On May 2, 2017, the trial court issued an order pursuant to Pa.R.A.P. 1925(b) to [Appellant] requiring a concise statement of errors complained of on appeal within 21 days. [After receiving an extension, Appellant complied timely. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 26, 2018.]

*Id.* at 3.

On appeal, Appellant presents the following issues for our review:

1. Did not the lower court err and abuse its discretion in finding [A]ppellant guilty of 18 Pa.C.S.A. § 6105 where there was insufficient evidence that he possessed, used, controlled, sold, transferred, or manufactured or obtained a license to possess, use, control, sell, transfer, or manufacture a firearm in Pennsylvania?

2. Did not the lower court err and abuse its discretion by finding guilt where there was insufficient evidence that Appellant recklessly engaged in conduct which placed or may have placed another person in danger of death or serious bodily injury?

3. Did not the lower court err and abuse its discretion by imposing a sentence that is manifestly excessive and unreasonable by failing to consider Appellant's rehabilitative

---

"jawn" had been removed from the residence. Appellant testified at trial that he was referring to marijuana. *Id.* at 63. However, the Commonwealth argued that Appellant's use of the word "jawn" referred to a firearm, because Appellant stated that the "jawn" was "hot," meaning recently used during the commission of a crime. *Id.* at 71.

needs or otherwise follow 42 Pa.C.S.A. § 9721(b), [] by imposing a sentence based entirely on the severity of the offense?

Appellant's Brief at 4.

In his first issue presented, Appellant claims that there was insufficient evidence to support his firearm conviction. *Id.* at 15-19. More specifically, Appellant claims that there was no eyewitness testimony that he "possessed a gun or had fired a gun[.]" *Id.* at 16. Because the police did not recover a firearm, Appellant argues the trial court erred by relying on ballistic evidence that showed that firearms of different calibers were discharged from the street and the porch during exchange of gunfire in this case. *Id.* at 17. Appellant claims that the trial court further erred by relying upon three, recorded conversations that Appellant had from prison, because such evidence constituted hearsay.[3] *Id.* at 18.

Our standard of review is as follows:

_____

[3] Defense counsel objected to the introduction of the prison recordings, arguing that statements made by unidentified third persons speaking to Appellant constituted hearsay. *See* N.T., 5/26/2016, at 44-46. However, because Appellant failed to raise the trial court's admissibility ruling in his concise statement pursuant to Pa.R.A.P. 1925(b), he has waived this aspect of his claim. *See Commonwealth v. Scott*, 952 A.2d 1190, 1191 (Pa. Super. 2008) (issues not raised in a Rule 1925(b) statement are waived). Insofar as the trial court's evidentiary ruling relates to Appellant's sufficiency challenge, our Supreme Court has determined that "it is improper for a court, when reviewing a sufficiency challenge, to eliminate from its consideration any evidence which it deems to be inadmissible." *Commonwealth v. Sanford*, 863 A.2d 428, 431 (Pa. 2004). As such, we are to consider "all of the testimony" presented to the factfinder at trial, "without consideration as to the admissibility of that evidence." *Id.* (citation and original emphasis omitted).

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hewlett*, 189 A.3d 1004, 1008 (Pa. Super. 2018) (citations omitted).

Appellant was convicted of persons not to possess a firearm, which is defined as follows:

(1) A person who has been convicted of an offense enumerated in subsection (b),[4] within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

---

[4] At trial, Appellant stipulated that he had a prior conviction for an enumerated offense under subsection (b) of the statute. *See* N.T., 5/26/2016, at 43. He does not challenge this element of the crime on appeal.

- 5 -

Here, the trial court determined that there was circumstantial evidence that Appellant exchanged gunfire with two assailants on the street in front of his house. The trial court first noted that although Ms. Freeman did not see Appellant physically wielding a firearm, she witnessed Appellant flee into the home, go into another room inside the house, and rush back on to the porch from where he originally fled. Trial Court Opinion, 1/26/2018, at 6. Appellant was the only person who exited the home and ran towards the gunfire. *Id.* Ms. Freeman heard two or three gunshots soon thereafter. *Id.* The trial court found sufficient circumstantial evidence that Appellant retrieved a firearm and returned fire on the day in question. *Id.* Police found a group of 9mm cartridges on the sidewalk in front of the residence at issue and two spent .40 caliber cartridges on the porch. *Id.* at 7. The trial court determined that the ballistics evidence was consistent with Ms. Freeman's testimony. *Id.* Finally, the trial court determined that, in reviewing three recorded prison conversations and interpreting the slang code words used, Appellant inquired on several occasions about what happened to the weapon used in the shooting. *Id.* at 8.

Upon review of the record, we conclude that there was sufficient evidence to support Appellant's firearm conviction. Here, the Commonwealth presented circumstantial evidence that Appellant used a firearm on the day in question. Appellant initially retreated into his home when gunshots erupted. He went into a room and quickly rushed back outside, by himself, toward the

gunfire. An eyewitness heard two or three additional gunshots while Appellant was on the porch. Ballistic evidence confirmed that shots were fired from the front porch toward the street. Taking all the evidence together, we conclude it was proper for the trial court to infer circumstantially that Appellant possessed and used a firearm despite the prohibition against him doing so. Moreover, Appellant's conversations from prison showed his concern with police recovering somewhere inside his house the firearm used during the commission of the crimes. Based upon our standard of review, we conclude that sufficient evidence supported Appellant's conviction for persons not to possess a firearm.

Next, Appellant contends that the Commonwealth did not present sufficient evidence to support his conviction for REAP. Appellant's Brief at 20-21. More specifically, Appellant claims that because the Commonwealth failed to present evidence that "Appellant was seen to possess or fire a gun[,]" it did not prove his "present ability to cause harm" as statutorily required.[5] *Id.* Having already determined that the Commonwealth presented sufficient evidence to establish that Appellant used a firearm to support his conviction for persons not to possess a firearm conviction, Appellant's second issue

---

[5] "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. We have previously held that "discharging [] a weapon numerous times in the vicinity of others constitutes a sufficient danger to satisfy the REAP statute." ***Commonwealth v. Hartzell***, 988 A.2d 141, 144 (Pa. Super. 2009).

necessarily fails. Based upon all of the foregoing, we affirm Appellant's convictions.

In his final claim presented, Appellant claims that the trial court erred by sentencing him to an excessive sentence without stating its reasons for the sentence on record. Appellant's Brief at 21-23. More specifically, he argues that the trial court failed to consider his rehabilitative needs and based his sentence entirely on the severity of the offense, without adequately stating its reasons on the record for the imposition of the sentence. This claim implicates the discretionary aspects of sentencing, which is not appealable as of right. Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by satisfying a four-part test. *See Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa. Super. 2015).

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> An appellate court will find a "substantial question" and review the decision of the trial court only where an aggrieved party can articulate clear reasons why the sentence imposed by the trial court compromises the sentencing scheme as a whole.

*Id.* (internal case citations omitted).

Here, Appellant preserved his claim by filing a post-sentence motion, filing a timely notice of appeal, and raising the issue in his concise statement

pursuant to Pa.R.A.P. 1925(b). Moreover, an allegation that the trial court failed to offer specific reasons for a sentence raises a substantial question. *See Commonwealth v. Dunphy*, 20 A.3d 1215, 1222 (Pa. Super. 2011); *see also* 42 Pa.C.S.A. § 9721(b) ("In every case in which the court imposes a sentence for a felony or misdemeanor [] the court **shall** make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.") (emphasis added).

Our standard of review in sentencing matters is well settled:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009) (citation omitted).

This Court has previously determined:

[T]he court must state its reasons on the record at the time the sentence is imposed. Requiring the sentencing court to state its reasons at that time provides a procedural mechanism for the aggrieved party both to attempt to rebut the court's explanation and inclination before the sentencing proceeding ends, and to identify and frame substantive claims for post-sentence motions or appeal. Therefore, [] it is not sufficient for the trial court to state its reasons in a post-sentence Rule 1925(a) opinion. The reasons must be given "in open court at the time of sentencing." 42 Pa. C.S. § 9721(b).

[…A]lthough a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence, ... the record as

- 9 -

a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender. A discourse on the court's sentencing philosophy, as it applies to the defendant before it, is not required. [...T]he reasons must reflect the judge's consideration of the sentencing code, the circumstances of the offense and the character of the offender.

*Commonwealth v. Flowers*, 149 A.3d 867, 875–876 (Pa. Super. 2016) (case citations, original brackets, and most quotations omitted).

Moreover, we have stated:

When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. Where pre-sentence reports exist, we shall ... presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself.

*Commonwealth v. Antidormi*, 84 A.3d 736, 761 (Pa. Super. 2014).

Here, upon review of the certified record, the trial court did not place its reasons for the imposition of Appellant's sentence on the record. Instead, when Appellant attempted to reargue the merits of his case during allocution, the trial court cut him off and imposed sentence without any elaboration. *See* N.T., 12/1/2016, at 14-15. Thereafter, while the trial court states in its Rule 1925(a) opinion that it considered the need to protect the public, the gravity of the offense and the rehabilitative needs of Appellant, as well as Appellant's "numerous arrests as both an adult and juvenile, his numerous convictions, his previous violations while under court supervision, [and] defense counsel's

mitigation arguments" in fashioning Appellant's sentence, it is not sufficient for the trial court to state its reasons in a subsequent Rule 1925(a) opinion. *See* Trial Court Opinion, 1/26/2018, at 13-14. Moreover, while the docket indicates that a presentence investigation report was requested in this matter, it is not contained in the certified record and the trial court did not acknowledge that it had the benefit of such a report in rendering its decision at the time of sentencing. As such, there is no indication of record that the trial court received, reviewed, or was aware of a presentence investigation report and, thus, we cannot presume that the trial court was aware of all of the relevant information when sentencing Appellant. Hence, the trial court abused its discretion by failing to state the reasons on the record for the imposition of Appellant's sentence. Accordingly, we affirm Appellant's convictions, but are constrained to vacate Appellant's judgment of sentence and remand for resentencing.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/18

- 11 -